IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| W. JAMES KERNAGHAN, II, et al., : | |
| : | CIVIL ACTION |
| : | |
| Plaintiffs, : | NO. 11-1051 |
| : | |
| v. : | |
| : | |
| BCI COMMUNICATIONS, INC., et al., : | |
| : | |
| Defendants. : | |

**OPINION**

**Slomsky, J.**                                                                                   **July 19, 2011**

I.    INTRODUCTION

Before the Court is a Motion to Dismiss filed by Defendant Clearwire Corporation (Doc. No. 9). This case arises out of an Independent Contractor Agreement (the "Agreement") between Plaintiffs and another defendant, BCI Communications, Inc. ("BCI"). Defendant BCI was hired by Defendant Clearwire Corporation ("Clearwire") to serve as general contractor on a project to launch Clearwire's wireless network in the Philadelphia area. BCI in turn entered into the Agreement with Plaintiffs. In the Agreement, Plaintiffs promised to perform site assessments and other site acquisition work on new and existing BIC sites, some of which would be used for the Clearwire/BCI project. In the Complaint, Plaintiffs assert that Defendant BCI breached the Agreement (Count I - breach of contract) and that Defendant Clearwire intentionally interfered with the Agreement (Count II - tortious interference).

On April 20, 2011, Defendant BCI filed an Answer to the Complaint. (Doc. No. 7.) On May 16, 2011, Defendant Clearwire filed the Motion to Dismiss now before the Court. (Doc.

No. 10.)  The issue presented by the Motion is a narrow one.  Clearwire moves to dismiss the tortious interference claim alleged in Count II, arguing that this claim can only be asserted against a party with no beneficial or economic interest in the underlying agreement (the so-called "stranger" rule).  Here, since the Clearwire project was the impetus for Plaintiffs and Defendant BCI to enter into the independent subcontracter Agreement, Clearwire argues it is not a "stranger" to the Agreement and therefore cannot be liable for tortious interference.  In addition, Clearwire argues that the termination clause in the Agreement provides that BCI may terminate the Agreement if Plaintiffs' work is unsatisfactory to BCI or "Customer."  Clearwire asserts that it is the "Customer" of BCI to which the Agreement referred and therefore had standing to terminate the Agreement.  Based on its status as the "Customer," Clearwire asserts that it is a third-party beneficiary under the Agreement and, as a third-party beneficiary, it is not a "stranger" to the Agreement and therefore cannot be held liable for tortious interference with it.

      Plaintiffs disagree with Clearwire's characterization of the termination clause and assert that the "stranger" rule does not apply in Pennsylvania.  According to Plaintiffs, Pennsylvania has adopted the Restatement (Second) of Torts § 766 regarding tortious interference.  This Section authorizes a claim of tortious interference to be brought against a person not a party to the contract.  Plaintiffs assert that Defendant Clearwire is not a party to the Agreement and can be held liable under Section 766.  In addition, Plaintiffs aver that the termination provision upon which Clearwire relies in asserting it is a third-party beneficiary is mischaracterized by Clearwire.  According to Plaintiffs, the term "Customer" as used in the provision does not

specifically refer to Clearwire, but instead refers generally to multiple wireless service providers.[1]

The Court agrees with Plaintiffs. Pennsylvania does not apply the "stranger" rule as defined by Clearwire. Further, the use of the word "Customer" in the termination provision of the Agreement is ambiguous and for purposes of the Motion, the Court accepts as true the facts and inferences alleged by Plaintiffs which preclude a finding at this stage that Clearwire is the "Customer." Thus, at the Motion to Dismiss stage of the proceedings, the Court cannot conclude that Clearwire is a third-party beneficiary and therefore a party to the Agreement. For these reasons, the Court will deny the Motion to Dismiss the claim for tortious interference with existing business relations.

## II.     FACTUAL BACKGROUND

Plaintiff W. James Kernaghan, II ("Kernaghan") is the owner and President of Plaintiff On Target Acquisition, LLC ("On Target"), a Pennsylvania Limited Liability Company. (Compl., Doc. No. 1 ¶¶ 1-2.) On Target specializes in "scouting, securing, surveying, and maintaining locations for wireless and broadcast communications towers and structures." (Id. ¶

---

[1] Defendant Clearwire makes one additional argument in support of the Motion to Dismiss. It asserts that the Court should dismiss Count II insofar as Plaintiffs allege tortious interference with prospective contractual relations. (Doc. No. 9-2 at 7.) To state a claim for tortious interference with prospective business relations, Plaintiffs must plead the elements of a traditional tortious interference claim, plus additional facts to show "an objectively reasonable probability that [prospective relationships would] come into existence." Fresh Made, Inc. v. Lifeway Foods, Inc., No. 01-4254, 2002 WL 31246922, at *13 (E.D. Pa. Aug. 9, 2002). Here, Plaintiffs have failed to identify a specific, non-speculative prospective contract with which Clearwire interfered. Plaintiffs concede this point and acknowledge that the Court should grant the Motion in part, dismissing from Count II the claim of tortious interference with prospective business relations. Accordingly, the Court will grant the Motion to Dismiss in part, dismissing from Count II the claim of tortious interference with prospective contractual relations. (Doc. No. 1 ¶¶ 44, 51.) For reasons discussed below, the Court will deny the Motion in all other respects. Accordingly, the claim contained in Count II alleging tortious interference with existing business relations will remain.

2.) Kernaghan and On Target will be referred to collectively as "Plaintiffs."

Defendant BCI Communications, Inc. ("BCI") is a Delaware corporation with its principal place of business located in New Jersey.  (Id. ¶ 4.)  BCI owns and operates wireless broadcast communication sites throughout the United States.  (Id.)  Defendant Clearwire Corporation ("Clearwire") is a Delaware corporation with its principal place of business located in the state of Washington.  (Id. ¶ 5.)  Clearwire is a wireless broadband provider of personal communication services.  (Id.)

In or around January 2009, Plaintiffs learned that Clearwire hired BCI as a general contractor to, among other tasks, "'scrub' existing BCI sites and to secure lease agreements on BCI sites and other sites deemed qualified by Clearwire to launch its wireless network in and around the Philadelphia area" (the "Project").  (Doc. No. 1 ¶ 8.)  Plaintiff On Target had experience in performing this type of site acquisition work and successfully submitted a bid to BCI to assist BCI in performing this site acquisition work.  (Id. ¶ 9.)  Kernaghan, on behalf of On Target, signed an Independent Contract Agreement (the "Agreement") with BCI.  (Id. ¶ 12.)  In the Agreement, Plaintiffs agreed to perform site assessments and to secure leases, zoning approvals, and building permits.[2]  (Id.; see also Doc. No. 9-3.)

---

[2] In paragraph 12 of the Complaint, Plaintiffs state that a copy of the Agreement is attached as Exhibit "A."  However, the Agreement is not attached as an exhibit to the Complaint.  It is attached as an exhibit to the Motion to Dismiss.  (Doc. No. 9-3.)  In deciding a motion to dismiss, a district court is generally limited to considering the complaint itself, exhibits attached to the complaint, and matters of public record.  It may also consider "undisputedly authentic document[s] that a defendant attaches as . . . exhibit[s] to a motion to dismiss if the plaintiff's claims are based on th[ose] document[s]."  Watson v. Secretary Pennsylvania Dept. of Corrections, No. 10-2918, 2011 WL 2678920, at *2 (3d Cir. July 8, 2011) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993)).  Here, it is undisputed that Plaintiffs' claims are based on the Agreement, which is attached as an exhibit to the Motion to Dismiss.  Thus, the Court may properly consider the terms of the Agreement.

The Agreement provides:

> The term of this Agreement shall begin on the date stated above with an initial term of three (3) months. The Agreement shall then continue on a month-to-month basis unless earlier terminated by either party in accordance with the terms of this Agreement.

(Doc. No. 9-3 at 1.) With respect to termination, the Agreement provides as follows:

> In the event that [On Target's] performance is unsatisfactory, in Customer or BCI [sic] sole opinion, BCI shall have the right to immediately terminate [On Target's] assignment with Customer and terminate this Agreement.

(Doc. No. 9-3 at 2.) Plaintiffs claim that this paragraph provides that only BCI may terminate the Agreement if it is unsatisfied with On Target's work, but does not allow termination for any other reason and does not allow for early termination during the initial three (3) month term. (Doc. No. 1 ¶ 13.) Pursuant to the Agreement, Plaintiffs were to receive "in excess of" $105,000 for its work. (Id. ¶ 25.)

On January 29, 2009, Plaintiffs began work under the Agreement, searching, surveying, and securing the land, and obtaining permits, leases, zoning approvals, rights-of-way, and easements. (Id. ¶ 15.) While performing these tasks, Plaintiffs never received a complaint from BCI about the quality of their work. Moreover, Clearwire was made aware of the involvement of Plaintiffs. (Id. ¶ 14.) At the time Plaintiffs and BCI entered into the Agreement, Plaintiffs made their "professional associations clear to BCI, and disclosed all potential conflicts of interest to BCI." (Id. ¶ 10.)

On or about February 25, 2009, Christine Teeter, an employee of BCI, contacted Plaintiff Kernaghan to inquire whether he was representing AT&T in the Philadelphia area, or whether Plaintiffs had any other conflicts of interest with the BCI work. (Id. ¶ 17.) Kernaghan informed

Ms. Teeter he had no such conflicts and offered to sign a non-compete agreement. (Id. ¶ 18.) Plaintiffs allege "[u]pon information and belief," Clearwire, concerned that Plaintiffs did have conflicts of interest, demanded that BCI terminate the Agreement. (Id. ¶ 19.) In February 2009, BCI verbally informed Kernaghan that it would discontinue using Plaintiffs for completion of the Project. (Id. ¶¶ 22-23.)

On February 27, 2009, Plaintiffs signed a "BCI Communications, Inc. Confidentiality, Non-Disclosure/Non-Competition Agreement for Independent Contractors." (Id. ¶ 24.) Plaintiffs signed the agreement "after learning of Clearwire's concerns which prompted BCI to breach its Agreement with [Plaintiffs]." (Id.) Although Plaintiffs have performed certain stages of work and have "achieved several milestones in completion of the project," they have not been paid for any of their work." (Id. ¶¶ 26-27.)

Earlier, on February 11, 2011, Plaintiffs filed the Complaint in this case. (Doc. No. 1.) As noted previously, the Complaint contains two Counts. Count I names Defendant BCI as the only defendant and alleges breach of contract. (Id. ¶¶ 29-36.) BCI has filed an Answer to the Complaint, denying the allegations contained in Count I. (See Doc. No. 7.)

Count II names Defendant Clearwire as the only defendant and alleges tortious interference with contractual relations. (Doc. No. 1 ¶¶ 37-44, 51.)[3] Plaintiffs allege: (1) it had a valid contract with BCI; (2) Clearwire directed BCI to terminate this contract and to refrain from working with Plaintiffs in the future: (3) Clearwire had no privilege or justification for these actions; and (4) as a result of this conduct, Plaintiffs have sustained damage in the amount of the Agreement price. (Id. ¶¶ 38-40, 43-44, 51.) Clearwire has moved to dismiss the claims

---

[3] The Complaint does not contain paragraphs numbered 45-50.

contained in Count II for failure to state a claim. (Doc. No. 9.) Specifically, Clearwire asserts that it is not a "stranger" to the Agreement, and therefore cannot be held to have tortiously interfered with it. Plaintiff filed a Response in Opposition to the Motion. (Doc. No. 10.) On July 11, 2011, the Court held oral argument on the Motion.

### III.   STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Twp., No. 10-1294, 2010 WL 5071779 (3d Cir. Dec. 14, 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. 2010 WL 5071779, at *4; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (applying the principles of Iqbal and articulating the 12(b)(6) analysis as a two-part test).

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago, 2010 WL 5071779, at *4 (quoting Iqbal, 129 S. Ct. at 1947-50). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2)

reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, No. 10-3539, 2011 WL 2044166, at *2 (3d Cir. May 26, 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler, 578 F.3d at 210-11 (citing Phillips v. County of Allegheny 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV.   DISCUSSION

### A.   Applicable Law

A federal district court in a case involving diversity of citizenship jurisdiction applies state law on substantive legal issues. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). Here, the Court applies the law of Pennsylvania.[4]

---

[4] It is undisputed that Pennsylvania law applies to the tortious interference claim contained in Count II. Although the Agreement contains a choice of law provision calling for the application of New Jersey law, Clearwire did not assent to this provision and therefore is not bound by it. Further, even if Clearwire were a party to the Agreement, the choice of law provision would not necessarily apply to this tort claim. See Wurtzel v. Park Towne Place Assocs. Ltd. P'ship, No. 01-3511, 2002 WL 31487894, at *18 (Pa. Ct. Com. Pl. Nov. 5, 2002) (quoting Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc., 848 F. Supp. 569, 576 (E.D. Pa.1994))

> In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how Pennsylvania's highest court would decide th[e] case. See Nationwide Mutual Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000). "In predicting how the highest court of the state would resolve the issue, [we] must consider 'relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand.' " Id.

Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 46 (3d Cir. 2009).

The elements of a claim for tortious interference are derived from the Restatement (Second) of Torts § 766, which has been adopted in Pennsylvania. Prudential Ins. Co. of America v. Stella, 994 F. Supp. 318, 322 n.1 (E.D. Pa. 1998); see also Walnut Street Associates, Inc. v. Brokerage Concepts, Inc., 982 A.2d 94, 97 n.2 (Pa. Super. Ct. 2009) (citing Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175 (Pa. 1978)). Section 766 provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Accordingly, to State a claim for tortious interference under Pennsylvania law, a plaintiff must allege:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual

---

("Contractual choice of law provisions, however, do not govern tort claims between contracting parties unless the fair import of the provision embraces all aspects of the legal relationship. Courts analyze choice of law provisions to 'determine based on their narrowness or breadth, whether the parties intended to encompass all elements of their association.'").

>legal damage as a result of the defendant's conduct.

CGB Occupational Therapy, Inc. v. RHA Health Servs. Inc., 357 F.3d 375, 384 (3d Cir. 2004).

"Essential to a right of recovery . . . is the existence of a contractual relationship between the plaintiff and a 'third person' other than the defendant." Rimbach, 519 A.2d at 1000. See also Motise v. Parrish, 297 Fed. App'x 149, 152, No. 08-1881, 2008 WL 4672243, at *3 (3d Cir. Oct. 23, 2008) ("[A] party to the contract, may not tortiously interfere with the contract."). State and federal courts applying Pennsylvania law on tortious interference have acknowledged that a tortious interference claim cannot be asserted against a party to the contract. See, e.g., Ruder v. Pequea Valley Sch. Dist., No. 10-442, 2011 WL 1832794, at *9 (E.D. Pa. May 12, 2011); Levin v. Schiffman, No. 00-4442, 2001 WL 1807922, at *9 (Pa. Ct. Com. Pl. Feb. 1, 2001).

### B. The Stranger Rule

Here, Plaintiffs allege: (1) they had a valid contract with BCI; (2) Clearwire directed BCI to terminate this contract and to refrain from working with Plaintiffs in the future: (3) Clearwire had no privilege or justification for these actions; and (4) as a result of this conduct, Plaintiffs have sustained damage in the amount of the Agreement price. (Doc. No. 1 ¶¶ 38-40, 43-44, 51.)

Defendant Clearwire does not dispute that Plaintiffs have alleged the second, third, and fourth elements of a tortious interference claim. However, they argue:

>With respect to the first element—the existence of a contractual relation between the claimant and a third party—courts around the country have uniformly held a defendant must be a stranger to the underlying contract with which it allegedly interfered. Put another way, the party must tortiously interfere with a contract under which it has no "beneficial" or "economic" interest.

(Doc. No. 9-2 at 5.) According to Clearwire, since the Agreement between Plaintiffs and BCI

was formed for the benefit of Clearwire, Clearwire had a beneficial interest in the Agreement. Clearwire, therefore, was not a stranger to the Agreement and cannot be held liable for tortiously interfering with it.

In states which apply the "stranger" rule, a plaintiff must establish that the defendant was a "stranger" to the protected business relationship with which it allegedly interfered. Edwards v. Prime, Inc., 602 F.3d 1276, 1302 (11th Cir. 2010).

> A defendant is a party in interest to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship. . . . When the defendant is an essential party to the allegedly injured business relationship, the defendant is a participant in that relationship instead of a stranger to it.

Id.

The parties agree that there is no state court or federal court that has addressed whether the Pennsylvania Supreme Court would adopt and apply the "stranger" rule to a tortious interference claim. In each court decision relied upon by Defendant Clearwire in support of the Motion to Dismiss, the "stranger" rule has been adopted only in that jurisdiction.[5]

As noted, the Supreme Court of Pennsylvania has adopted § 766 the Restatement as the

---

[5] The cases cited by Defendant Clearwire are: Edwards, 602 F.3d at 1302 (applying Alabama law and providing that to state a claim for tortious interference under Alabama law, a plaintiff must allege: "(1) the existence of a protected business relationship; (2) of which the defendant knew; (3) *to which the defendant was a stranger*; (4) with which the defendant intentionally interfered; and (5) damage"); Richards v. Relentless, Inc., 341 F.3d 35, 43 (1st Cir. 2003) (applying New York law); Ham Marine, Inc. v. Dresser Indus., Inc., 72 F.3d 454, 462 (5th Cir. 1995) (applying Mississippi law);  AMX Int'l, Inc. v. Battelle Energy Alliance, No. 09-210, 2010 WL 3984608, at *2 (D. Idaho Oct. 7, 2010) (applying Idaho law);  Oceguera v. Alutiiq Sec. & Technology, LLC, No. 10-22220, 2010 WL 3894606, at *4 (S.D. Fla. Oct. 1, 2010) (applying Florida law); Winicki v. City of Olean, 203 A.D.2d 893, 894 (N.Y. Sup. Ct. App. Div. 1994) (applying New York law).

law in Pennsylvania.  Section 766 and the commentary accompanying it do not contain a statement of the "stranger" rule as it has been defined in other jurisdictions.  Under Pennsylvania law, a claim for tortious interference will survive only if a defendant is not a party to the contract alleged to have been tortiously interfered with.  See, e.g., Daniel Adams Assocs., Inc. v. Rimbach Publ'g, 519 A.2d 997, 1000-02 (Pa. Super. Ct. 1987) (holding that a tortious interference claim could not be maintained against a corporate officer of a publisher where the underlying agreement was between the publisher and a sales representative because "the corporation and its agent are considered one so that there is no party against whom a claim for contractual interference will lie"); Levin, 2001 WL 1807922, at *9 ("[T]he tortious interference claim in Count II cannot be maintained by Levin on behalf of Funds, as against Schiffman, because Schiffman is a 50% shareholder of Funds and would thus be a party to the contract with the District."); Aveyard v. Pennwalt Corp., No. 85-3529, 1990 WL 391308, at *3 (Pa. Ct. Com. Pl. Feb. 26, 1990) ("[A] corporate manager is not a third party to the contract.").

However broad this preclusive test under Section 766 appears to be in Pennsylvania, the Court will not expand the test to include language that a defendant be a "stranger" to the agreement, having no "beneficial or economic interest" in it.  Under Pennsylvania law, Plaintiffs need only show the existence of a contract between Plaintiffs and a party other than Clearwire against whom they have brought the tortious interference claim.  Plaintiffs have done so here by alleging the existence of the Agreement between Plaintiffs and BCI.  Consequently, given the state of the law in Pennsylvania, the Motion to Dismiss the tortious interference claim in Count II will be denied.

### C.     Defendant Clearwire's Claim To Be A Third Party Beneficiary Of the Agreement

Recognizing that Pennsylvania requires that a defendant not be a party to the agreement for it to be subject to a tortious interference claim, Clearwire asserts that it is in fact a "party" to the Agreement because the termination clause refers to it as the "Customer" of BCI.  As stated above, the termination clause provides:

> In the event that [On Target's] performance is unsatisfactory, in Customer or BCI [sic] sole opinion, BCI shall have the right to immediately terminate [On Target's] assignment with Customer and terminate this Agreement.

(Doc. No. 9-3 at 2.)  The Agreement does not define who is the "Customer."  Thus, the meaning of this clause is not entirely clear.  While Clearwire interprets this provision as providing that BCI may terminate the Agreement if Plaintiffs' work is unsatisfactory either to it or to BCI, which would render Clearwire a Customer and third-party beneficiary to the Agreement, Plaintiffs argue that Customer is a generic term referring to a number of wireless service providers.  At this stage of the proceedings, however, the relationship among the parties is not factually established in its entirety and in deciding the Motion to Dismiss the Court must draw all reasonable interferences in favor of Plaintiffs as the non-moving parties.  Since a clear inference cannot be drawn at this stage that Clearwire is the "Customer" referred to in the termination clause, the Motion to Dismiss will be denied for this additional reason.

## V.    CONCLUSION

For the forgoing reasons, the Court will grant in part and deny part the Motion to Dismiss (Doc. No. 9). The Court will grant the Motion in part, dismissing Count II to the extent it contains a claim for tortious interference with prospective contractual relations. See footnote 1, supra. The Court will deny the Motion in all other respects. The claim contained in Count II alleging tortious interference with existing contractual relations will remain.

An appropriate Order follows.